UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDREW LEE-LEO HILL,

          Plaintiff,                               Hon. Janet T. Neff

v.                                                Case No. 1:10-CV-470

KENNETH McKEE, et al.,

          Defendants.

_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #25). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.


## BACKGROUND

       Plaintiff initiated this action against the Michigan Department of Corrections (MDOC) and the following individuals: (1) Kenneth McKee; (2) Darrick Alvarez; (3) B. Novak; (4) Connie Chick; (5) Unknown Holmes; and (6) Deb Conrad. In his amended complaint, Plaintiff makes the following allegations.

       After writing "several grievances" against unnamed prison officials, Plaintiff was subjected to retaliation. On April 28, 2010, Defendant Alvarez charged Plaintiff with a major misconduct violation for "disobeying a direct order." Defendant Novak failed to properly investigate the charges against Plaintiff, who was convicted of this charge. On May 6, 2010, Plaintiff began

experiencing chest pain, at which point Defendant Alvarez transported Plaintiff to Health Care via a wheel chair. Upon arriving at Health Care, Defendant Chick neither examined nor treated Plaintiff. Instead, Plaintiff was "hand cuffed and taken to the hole." Later that same day, Defendant Alvarez charged Plaintiff with another major misconduct violation for "disobeying a direct order." Defendant Novak again failed to properly investigate the charges against Plaintiff, who was convicted of this charge.

While in segregation (the hole), Plaintiff "repeated[ly]" requested medical treatment, "but got no reply." On May 12, 2010, Plaintiff was examined by Defendant Holmes who told Plaintiff that he would order him medication and schedule him for x-rays. Plaintiff never received any medication and was never scheduled for x-rays.

On June 1, 2009, Plaintiff was transferred to the Bellamy Creek Correctional Facility (IBC) so that he could participate in "the federally funded Rehabilitation Learning Site program." On May 5, 2010, Plaintiff was "discharged from the program without a hearing, violating his due process rights." Defendant Conrad told Plaintiff that he was discharged from the program because he no longer satisfied the relevant criteria.

Plaintiff alleges that: (1) Defendant Alvarez subjected him to unlawful retaliation; (2) Defendant Novak violated his right to due process; (3) Defendants Chick and Holmes were deliberately indifferent to his serious medical needs; and (4) Defendant Conrad violated his right to due process. Plaintiff requests the following relief: (1) transfer to another facility "for medical treatment;" (2) an injunction preventing Defendants "from violating their own administrative policies and federal and state laws;" (3) removal from his record of the two major misconduct violations; (4) two-hundred fifty thousand dollars ($250,000.00) in compensatory damages; (5) ten thousand dollars ($10,000.00) in

punitive damages; and (6) appointment of a master to supervise implementation of the Court's Order. On July 9, 2010, the Honorable Janet T. Neff dismissed Plaintiff's claims against Defendants MDOC, Novak, and Conrad for failure to state a claim on which relief may be granted. Defendants Alvarez and Chick now move for summary judgment. Plaintiff has not yet effected service on Defendant Holmes.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.              **Eleventh Amendment Immunity**

Defendants Alvarez and Chick assert that they are entitled under the Eleventh Amendment to immunity from Plaintiff's official capacity claims.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States."  *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000).  Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court.  *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)).  The Court notes that

the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) ("[u]nder the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

In his amended complaint, Plaintiff states that he is suing Defendants Alvarez and Chick in both their personal and official capacities seeking monetary and injunctive relief. Accordingly, the undersigned recommends that to the extent Plaintiff seeks monetary damages from Defendants in their official capacity, such claims be dismissed on Eleventh Amendment grounds.

## II.          Exhaustion

Defendants Alvarez and Chick assert that they are entitled to relief because Plaintiff has failed to properly exhaust any of the claims asserted against them. As detailed below, the Court agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly

foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all

those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g.*,* the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Defendants, who bear the burden of demonstrating that Plaintiff has failed to properly exhaust the claims in question, have submitted evidence concerning three grievances Plaintiff filed with prison officials. Plaintiff has also submitted evidence regarding three other grievances that he filed. As previously noted, Plaintiff alleges in his amended complaint that: (1) Defendant Alvarez charged him with a major misconduct violation on April 28, 2010, and May 6, 2010, as retaliation for filing previous grievances; and (2) on May 6, 2010, Defendant Chick denied his request for medical treatment.

A.     Grievance IBC-10-03-0938-14a

Plaintiff initiated this grievance on March 28, 2010, alleging that the prison law library failed to maintain a particular item.  (Dkt. #26, Exhibit E).  While Plaintiff pursued this grievance through all three steps of the grievance process, such fails to exhaust any of the claims asserted against Defendants Alvarez or Chick.

B.     Grievance IBC-10-05-1272-12D3

Plaintiff filed this grievance on May 4, 2010, alleging that prison officials (other than Defendants Alvarez or Chick) refused to provide him with requested medical treatment.  (Dkt. #27, Exhibit F).  Defendants have submitted evidence that Plaintiff failed to pursue this grievance through Step III of the grievance process.  (Dkt. #27, Exhibit H).  Plaintiff has submitted no evidence to the contrary.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants Alvarez or Chick.

C.     Grievance IBC-10-05-1301-28a

Plaintiff filed this grievance on May 8, 2010, alleging that on May 6, 2010, Defendant Chick denied his request for medical treatment.  (Dkt. #27, Exhibit G).  Defendants have submitted evidence that Plaintiff failed to pursue this grievance through Step III of the grievance process.  (Dkt. #27, Exhibit H).  Plaintiff offers no evidence to the contrary.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants Alvarez or Chick.

D.      Grievance IBC-10-05-1232-17I

Plaintiff filed this grievance on May 1, 2010, alleging that Defendant Alvarez forced him to exit the dining hall before he had completed his meal, in violation of ACA standards.  (Dkt. #34, Exhibit E).  Even if the Court assumes that Plaintiff pursued this grievance through Step III, this grievance does not concern any of the claims asserted in Plaintiff's amended complaint.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants Alvarez or Chick.

E.      Grievance IBC-10-05-1382-28i

Plaintiff filed this grievance on May 12, 2010, alleging that earlier that day several prison officials, including Defendant Alvarez but not Defendant Chick, had imprudently secured his legal papers during his transfer to another cell.  (Dkt. #34, Exhibit K).  While Plaintiff pursued this grievance through Step III, this grievance does not concern any of the claims asserted in Plaintiff's amended complaint.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants Alvarez or Chick.

F.      Grievance IBC-10-04-1024-12E1

Plaintiff filed this grievance on April 4, 2010, alleging that on February 19, 2010, and again on March 28, 2010, "health care" failed to respond to his requests for medical treatment.  (Dkt. #34, Exhibit L).  While Plaintiff pursued this grievance through Step III, this grievance does not concern any of the claims asserted in Plaintiff's amended complaint.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants Alvarez or Chick.

In sum, Defendants Alvarez and Chick have carried their burden of establishing that Plaintiff has failed to properly exhaust any of the claims asserted against them in Plaintiff's amended complaint. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Alvarez and Chick be dismissed without prejudice for failure to properly exhaust administrative remedies. Furthermore, as discussed below, the undersigned recommends in the alternative that Defendant Alvarez is entitled to relief on other grounds.

## II.         Defendant Alvarez

As previously noted, Plaintiff alleges in his amended complaint that Defendant Alvarez charged him with a major misconduct violation on April 28, 2010, and May 6, 2010, as retaliation for filing previous grievances.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendant Alvarez does not challenge Plaintiff's claim on the first two elements, but asserts that because he charged Plaintiff with the misconduct violations in question for a reason completely unrelated to Plaintiff's protected conduct, he is entitled to relief.

With respect to the causation element, Plaintiff must demonstrate that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In

examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (same); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if Defendant demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Defendant Alvarez has submitted an affidavit in which he asserts that he charged Plaintiff with a misconduct violation on April 28, 2010, because Plaintiff "failed to comply" with "several" direct orders to exit the chow hall. (Dkt. #26, Exhibit A). At a hearing concerning this charge, Plaintiff acknowledged that he "did hear and understand that he was to leave the chow hall and he failed to comply." (Dkt. #26, Exhibit A-3). While Plaintiff argues at length, in response to the present motion, that he should not have been ordered to leave the chow hall because his allotted time had not yet expired, Plaintiff does not assert or present evidence to dispute the evidence that he disobeyed a direct order to exit the chow hall. Defendant Alvarez has established that his decision to charge Plaintiff with this misconduct violation was completely unrelated to Plaintiff's protected conduct. Aside from "bare allegations of malice," Plaintiff offers no evidence that Defendant Alvarez charged him with this

misconduct violation for a retaliatory purpose. The undersigned, therefore, recommends in the alternative that Defendant Alvarez is entitled to summary judgment as to this claim.

Defendant Alvarez has submitted an affidavit in which he asserts that on May 6, 2010, he escorted Plaintiff to Healthcare. (Dkt. #26, Exhibit A). Upon arriving at Healthcare, Defendant Chick instructed Plaintiff to "fill out a healthcare kite for services." Plaintiff refused and began "yelling" and engaging in "irate behavior." In response, Alvarez ordered Plaintiff "several times that he needed to leave Healthcare." Plaintiff refused, stating, "I'm not going anywhere." Defendant Alvarez asserts that Plaintiff with a major misconduct violation because he "failed to comply" with the order to "leave Healthcare." *Id.* At a hearing concerning this charge, Plaintiff acknowledged that he "heard and understood he was to leave health care and he failed to comply." (Dkt. #26, Exhibit A-4). While Plaintiff argues at length, in response to the present motion, that he should not have been ordered to leave health care because he was not required to complete a health care kite, Plaintiff does not assert or present evidence to dispute the evidence that he disobeyed a direct order to exit health care. Defendant Alvarez has established that his decision to charge Plaintiff with this misconduct violation was completely unrelated to Plaintiff's protected conduct. Aside from "bare allegations of malice," Plaintiff offers no evidence that Defendant Alvarez charged him with this misconduct violation for a retaliatory purpose. The undersigned, therefore, recommends in the alternative that Defendant Alvarez is entitled to summary judgment as to this claim.

**III.        Defendant Chick**

As discussed above, Plaintiff alleges in his amended complaint that on May 6, 2010, Defendant Chick denied his request for medical treatment in violation of his Eighth Amendment right

to be free from cruel and unusual punishment.  Defendant Chick has not expressly moved for summary judgment, but instead asserts that she is entitled to qualified immunity.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation.  *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).  As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated.  *Id.*  Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).  The question of whether a defendant enjoys qualified immunity is a question of law for the Court to resolve.  *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity.  *See Callahan*, 129 S.Ct. at 816.  On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted.  The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right."  *Id.*

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's

complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights).

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher,*

398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202). Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two steps (identified above) in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818 ("[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle*, 429 U.S. at 101-02. Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

When evaluating the objective prong of this analysis, the Court must first determine whether the alleged injury or medical need is "obvious," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir.

2004); *see also, Cain v. Irvin*, 286 Fed. Appx. 920, 927 (6th Cir., July 17, 2008). If the injury or medical need is obvious, the question becomes whether the plaintiff received treatment "within a reasonable time." *See Blackmore*, 390 F.3d at 899-900 (where the plaintiff's injury or medical need is obvious, he satisfies the objective prong of the analysis by demonstrating that "he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame"). If, on the other hand, the injury or medical need is not obvious, the plaintiff must submit "medical evidence" demonstrating that the delay or denial of treatment "resulted in additional injury." *Id.*

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Plaintiff may disagree with Defendant's treatment decisions and, furthermore, may even consider such decisions to constitute negligence. To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely

because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

The evidence thus far submitted by the parties reveals that Defendant Chick is not entitled to qualified immunity. Plaintiff alleges that on May 6, 2010, Defendant Chick denied his request for medical treatment to treat or evaluate the chest pains he was experiencing. Defendant Alvarez asserts in his affidavit that Plaintiff was experiencing stomach pains on the day in question. (Dkt. #26, Exhibit A). Plaintiff, on the other hand, asserts in his sworn brief in opposition that he was experiencing "severe chest pain." (Dkt. #33-34). Defendant Chick has submitted an affidavit in which she concedes that Plaintiff "came to Healthcare [on May 6, 2010,] in a wheelchair. (Dkt #26, Exhibit B). There does not appear to be any dispute that when Plaintiff arrived at healthcare, he was immediately instructed to complete a healthcare kite. (Dkt. #26, Exhibits A-B; Dkt. #34). Moreover, there does not appear to be any dispute that Plaintiff refused to complete a kite and that as a result he was denied medical treatment. (Dkt. #26, Exhibits A-B; Dkt. #34).

Interpreted in a light most favorable to Plaintiff, these facts reveal that Plaintiff was suffering chest pains on the day in question that necessitated that he be transported to health care in a wheelchair. Despite this circumstance, Plaintiff was completely denied medical treatment because of his refusal to complete the requested paperwork. Defendants have submitted no evidence demonstrating

that Plaintiff was experiencing only a minor malady or condition.  Absent any such evidence, a reasonable juror could conclude (based on the evidence thus far submitted) that Plaintiff was experiencing a serious medical condition in response to which Defendant Chick denied Plaintiff's request for treatment.  It was clearly established long before the events giving rise to this action that such conduct violates the Eighth Amendment.  Accordingly, the undersigned recommends that Defendant Chick is not entitled to qualified immunity.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #25), be **granted**. Specifically, the undersigned recommends that: (1) Plaintiff's claims asserted against Defendants Alvarez and Chick in their official capacity be dismissed on Eleventh Amendment grounds; (2) Plaintiff's claims against Defendants Alvarez and Chick be dismissed without prejudice for failure to properly exhaust administrative remedies; (3) Defendant Alvarez's motion for summary judgment be granted; and (4) Defendant Chick's motion for qualified immunity be denied. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  April 22, 2011                     /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge